## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AARON HUGHES, individually and on behalf of all others similarly situated, | Case No.: 2:19-cv-09532<br>Collective Action (29 U.S.C. § 216(b)) |
| v. | |
| JEAN LAFITTE HARBOR, L.L.C. | |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Jean Lafitte Harbor, L.L.C. (JLH) is a marina offering boat rentals, charter fishing, boat storage, camping, dining, and shopping. JLH is one of those companies that claims it doesn't have any employees. It puts the "independent contractor" label on all its workers. JLH pays them by the hour, but with no overtime pay, even though they regularly work 80 or more hours per week. Instead, JLH pays the same hourly rate for regular and overtime hours. Because this practice results in non-payment of overtime wages to Aaron Hughes and other similarly situated workers, Hughes brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*) ("FLSA").

### JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because JLH is headquartered in this district.

4. Hughes performed work for JLH in this District and Division.

### THE PARTIES

5. Hughes worked for JLH as handyman and crane operator.

6. Hughes brings this action on behalf of himself and all other similarly situated workers who were paid by the hour with no overtime pay and labeled by JLH as "independent contractors."

7. JLH paid each of these workers at the same hourly rate for all hours worked in a workweek, including those worked in excess of 40, without overtime pay required by the FLSA.

8. Hughes's written consent to be a party plaintiff is attached as Exhibit A.

9. Hughes seeks to represent a class of similarly situated hourly workers under the FLSA pursuant to 29 U.S.C. § 216(b). The FLSA Class sought to be certified is defined as:

> **All current and former hourly workers classified as contractors by JLH during the last three years.**

## FACTS

10. At all times hereinafter mentioned, JLH been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

11. At all times hereinafter mentioned, JLH has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

12. At all times hereinafter mentioned, JLH has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

13. At all times hereinafter mentioned, Hughes and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

14. Hughes performed duties for JLH that were integral to JLH's operations, including operating and maintaining the crane and forklifts, fixing anything broken on the dock, remodeling cabins and the bunk house, plumbing and electrical work, and mowing the grass.

15. JLH's employees routinely handle goods or materials—such as tools, forklifts, cranes, phones, computers, printers, lawn mowers, and office supplies—that have moved in, or were produced for, interstate commerce.

16. JLH's annual gross revenues are in excess of $1,000,000.

17. JLH is a "covered enterprise" subject to the requirements of the FLSA.

18. Hughes worked for JLH from about April 2016 to March 20, 2019.

19. Prior to this, Hughes worked for the former owner of the marina, which considered him an employee and withheld payroll taxes.

20. When JLH bought the property, JLH labeled Hughes as an independent contractor and quit withholding taxes.

21. JLH paid Hughes and the Putative Class Members by the hour with no overtime premium for hours worked in excess of 40 in a workweek.

22. For example, JLH paid Hughes $16 per hour.

23. Although Hughes should have been paid at least $24 per hour for hours worked in excess of 40 in a workweek, JLH only paid $16 for the hours it recorded.

24. Hughes's regular work schedule was 6 a.m. to 6 p.m., 7 days per week.

25. JLH controlled Hughes's and the Putative Class Members' terms and conditions of employment, including hours worked, duties, method of pay, and amount of pay.

26. JLH's owner and manager, Mary Couevas, oversaw the work performed by Hughes and the Putative Class Members.

27. As nonexempt employees, Hughes and the Putative Class Members were entitled to overtime pay equal to 1.5 times their regular rates of pay for hours worked in excess of 40 in a workweek.

28. Hughes and the Putative Class Members were non-exempt employees. While their precise job duties may have varied somewhat, any variations did not impact their entitlement to overtime for hours worked in excess of 40 in a workweek.

29. Furthermore, Hughes and the Putative Class Members performed work related to maintaining and operating the marina. The Putative class members include, but are not limited to: handymen, crane operators, mechanics, welders, store clerks, office workers, yard hands, janitors, waitstaff, and cooks.

30. JLH required Hughes to work 12 hours per day, 6 to 7 days per week. Accordingly, he regularly worked 72 to 84 hours per workweek.

31. JLH knew Hughes and the Putative Class Members worked many more than 40 hours in a workweek because JLH kept records of the hours they worked.

32. It is well established that hourly laborers—like Hughes and the Putative Class Members—are not exempt from the overtime provisions of the FLSA laws, no matter what their job duties are.

33. JLH knows its hourly workers are not exempt from the FLSA's overtime provisions.

34. It is also well-known that hourly workers like Hughes and the Putative Class Members working on a permanent basis using the company's tools and under the company's direction, are employees, not contractors. Accordingly, JLH knew, or acted with reckless disregard, as to whether it properly labeled Hughes and the Putative Class Members as independent contractors.

## CAUSE OF ACTION—VIOLATION OF THE FLSA

35. By failing to pay Hughes the FLSA Class overtime at one-and-one-half times their regular rates, JLH violated the FLSA's overtime provisions.

36. Because JLH knew, or showed reckless disregard for whether, its pay practices violated the FLSA, JLH owes these wages for the past three years.

37. JLH owes Hughes and the FLSA Class an amount equal to the unpaid overtime wages as liquidated damages.

38. Hughes and the FLSA Class are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

## COLLECTIVE ACTION ALLEGATIONS

39. Hughes incorporates all previous paragraphs and alleges that the illegal pay practices JLH imposed on him were likewise imposed on the Putative Class Members.

40. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

41. Numerous other individuals who worked with Hughes indicated they were improperly labeled as contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and/or federal wage laws.

42. Thus, JLH imposed a uniform practice or policy on Hughes and the Putative Class Members regardless of any individualized factors.

43. Based on his experiences and tenure with JLH, Hughes is aware that JLH's illegal practices were imposed on the Putative Class Members.

44. Putative Class Members were all improperly classified as non-employee contractors and not afforded required overtime compensation when they worked in excess of 40 hours per week.

45. JLH's failure to pay wages and overtime compensation at the rates required by the FLSA results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

46. The specific job titles or precise job locations of the various Putative Class Members do not prevent collective treatment.

### RELIEF SOUGHT

47. WHEREFORE, Hughes prays for judgment against JLH as follows:

   (a) For an order certifying this case as a collective action for the purposes of the FLSA claims;

   (b) For an order finding JLH liable for violations of the FLSA with respect to Hughes and all Putative Class Members covered by this case;

   (c) For a judgment awarding all unpaid wages and liquidated damages to Hughes and all Putative Class Members covered by this case;

   (d) For a judgment awarding Hughes and all Putative Class Members covered by this case their costs of this action;

   (e) For a judgment awarding Hughes and all Putative Class Members covered by this case their attorneys' fees;

   (f) For a judgment awarding Hughes and all Putative Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

   (g) For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: ***/s/ Matthew S. Parmet***
     **Matthew S. Parmet**
     Louisiana Bar # 32855
**PARMET PC**
PO Box 540907
800 Sawyer St. (77007)
Houston, Texas 77254
phone 713 999 5228
fax 713 999 1187
matt@parmet.law

**David I. Moulton**
Texas Bar No. 24051093
(seeking admission *pro hac vice*)
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
dmoulton@brucknerburch.com

**Attorneys for Plaintiff**